Peck, J.,
dissenting:
I dissent from so much of the opinion of the majority of the court as permits the case of Edward Padelford to continue on the docket for further proceedings.
It is to me a new practice which authorizes a final judgment in favor of one of two parties to a suit at law upon the same record, and *225 continues the action as to the other for another hearing and a second final judgment. It is a mode of proceeding by piecemeal, which is entirely anomalous and unprecedented so far as my knowledge extends. By this procedure one action is converted into two. The petition is made to serve a double purpose and to assist two different parties, who declare that they have no joint interest. It is frequently said that this courtis sui generis, and therefore it is often asked to do.many things which are unknown in the established practice of other tribunals. Henceforward I shall cease to wonder at whatever may be invited of it. I would as soon think of giving a judgment to a party for such portion of his demand as he has established by testimony, and then continue the cause on the docket, to enable him to make proof as to the residue of his claim, and afterwards give him another or other judgments, from time to time, as to continue this action on the docket after a final judgment has been pronounced in favor of one of the parties, waiting until time or circumstances shall enable the other party to receive a final judgment in his favor.
I have heard of interlocutory and final judgments; the former, Blackstone says in his Commentaries, are such as are given in the middle of a cause, and do not finally determine or complete the suit. Final judgments are such as at once put an end to the action. The judgment for Mott comes in the middle of the suit, but yet it is not interlocutory; if it is, it gives him a stone instead of bread; it can scarcely be called final, since it does not at once put an end to the suit; if it is final, there must be several judgments, each of them final, in the same action and upon the identical record. Decrees in chancery do not in this respect differ materially from judgments; they are also interlocutory or final; the latter, Mr. Blackstone says, come after all issues are tried and settled and all references to a master ended. For Mr. Mott, and I may say as to Mr. Padelford, all the issues have been tried, and all the references are settled; hence, so far as he is concerned, whether we call his a judgment or decree, it is final. So far as Mr. Padelford is concerned it is interlocutory only. Then there must be a final judgment in reserve for him in the future. There can no more he two final decrees in one proceeding than two final judgments; so that, whether we proceed as at law or at equity, if the action is to he considered as pending for the benefit of Mr. Padelford, I find the same difficulties. If we are merely sitting in these cases as a court of inquiry to furnish information to the Treasury Department, upon which that department is to adjudicate, a proceeding like this might be sanctioned, *226 but, in my opinion, not otherwise. But this court has always held that it was not in any sense a branch of the Treasury Department.
I consented to allow the motion to amend the prayer of the petition, as I supposed the counsel acting’ for Mr. Mott wished to protect his interests and enable him to receive a judgment to which he is, but Mr. Padelford is not, entitled; but I gave the consent under thfe expectation that the same judgment would be final by dismissing the proceeding as to Mr. Padelford. I desire now to place myself right in the matter as I consider it, so that no such irregular ruling shall receive my sanction as a precedent for the future.